**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

ROMCO STRUCTURAL SYSTEMS CORP.,

                    Plaintiff,        **MEMORANDUM & ORDER**

      v.                                      1:20-cv-2772 (ST)

AXIS INSURANCE COMPANY,

                    Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

      This case involves an insurance dispute between an insured employer, Plaintiff, and its excess liability insurer, Defendant. Plaintiff's employee was injured at a construction site while working for Plaintiff and brought an action in state court, which Plaintiff was eventually brought into via a third-party complaint. Defendant disclaimed coverage for the injury, but Plaintiff argues that disclaimer was both improper under the New York Insurance Law and a breach of its insurance contract, and that it is entitled to coverage for the employee's injury. Both parties have moved for summary judgment. For the reasons detailed herein, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

      The following facts are agreed upon by both parties.

      Marel Dejesus Vargas Rojas fell from an elevated height on June 26, 2018, while working on a construction project at 4890 Veterans Memorial Highway in Holbrook, New York. Pl. R. 56.1 Br., ¶ 1, ECF No. 30-1. In his complaint in an action in state court seeking damages

1

for his injuries, Rojas alleges that at the time of his work accident, he was employed by Plaintiff. Rojas Compl., ¶ 46, ECF No. 1, Ex. 1. Rojas' suit was initially brought against several defendants not named in this action, who allegedly owned or were responsible for the premises and/or construction site at which Rojas was performing the construction work. *Id.* at ¶¶ 10-45. Rojas alleged the defendants named in his action were negligent, and that negligence led to his injuries. Def. R. 56.1 Br., ¶¶ 2-6, ECF No. 33-2. ROMCO was never named as a defendant by Rojas. *Id.* at ¶ 7. On or around June 15, 2020, two of the defendants named in the Rojas action, Above All Equities, Inc. and LS Steel, Inc., filed a third-party complaint against the Plaintiff in this action, ROMCO, asserting claims for contribution, indemnity, and breach of contract. Pl. R. 56.1 Br., ¶ 51.

Plaintiff had three insurance policies at the time of Rojas' accident, one of which is relevant to this action. The first was a commercial liability policy provided by Admiral Insurance Company in the amount of $1,000,000 per occurrence and $2,000,000 of general aggregate coverage, effective November 8, 2017, to November 8, 2018. *Id.* at ¶ 29. The second policy was a New York State Insurance fund policy effective at the time of Rojas' accident. Def. R. 56.1 Br., ¶ 41. The third, at issue here, was a policy issued by the Defendant to the Plaintiff for excess liability coverage above and beyond the Admiral policy in the amount of $5,000,000. Pl. R. 56.1 Br., ¶ 8. Above All Equites, Inc. and L.S. Steel, Inc., two defendants in the Rojas action, were named as additionally insured on the policy, but only "with respect to liability for 'bodily injury' caused, in whole or in part, by: (1) [ROMCO's] acts or omissions; or (2) [t]he acts or omissions of those acting on [ROMCO's] behalf; in the performance of [ROMCO's] ongoing operations for the additional insured(s)." Pl. R. 56.1 Resp. Br., ¶ 10, ECF No. 34-1.

The AXIS policy, when issued, contained two provisions pertinent to this action. The first appears in the endorsements section and is listed as an exclusion endorsement for employee or worker bodily injury. It says, "It is agreed that…this insurance does not apply to any liability or damages arising out of any actual alleged injury to an employee or temporary worker of any insured arising out of or in the course of employment by any insured…This exclusion applies whether an insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of injury." Mangino Aff., Ex. Y, 122, ECF No. 33-3. The second pertinent provision appears separately as a New York-specific "limits of insurance endorsement" and reads, "Excess coverage for employers' liability is not applicable in situations where an employee is subject to New York Workers Compensation Law, because employers' liability coverage is unlimited in nature in New York State." *Id.* at 133.

There is extensive evidence in the record of why the policy contained these endorsements. RT Specialty acted to procure the AXIS insurance policy for ROMCO. Def. R. 56.1 Br., ¶¶ 11-12. On both October 26, 2017, and November 8, 2017, ROMCO indicated to AXIS that it had previously obtained workers' compensation coverage for its employees. *Id.* at ¶¶ 10-11. On November 9, 2017, RT Specialty sent an email to AXIS, asking for a policy providing $5 million in coverage in excess to the already obtained Admiral policy and stating "[t]he excess doesn't require labor law coverage" and asking that the policy include "a labor law exclusion." *Id.* at ¶ 12. AXIS responded that such a policy would cost $125,000. *Id.* at ¶ 15. On November 14, at RT Specialty's request, AXIS sent a quote for the policy which included the requested exclusion. *Id.* at ¶¶ 17-18.

On November 20, 2017, RT Specialty emailed AXIS asking, "Can you tell me what your price would be with labor law coverage?" *Id.* at ¶ 19. AXIS responded, "I can tell you it would be considerably more and we would probably only support up to [$3 million] in limits." *Id.* at ¶ 20. RT Specialty asked AXIS to quote the policy with labor law coverage as well and, after some back and forth, AXIS quoted a $3 million excess policy with labor law coverage at a $280,000 premium. *Id.* at ¶¶ 21-26. On November 28, RT Specialty asked AXIS to move forward with the $3 million policy with labor law coverage, but then, on November 29, advised differently, writing, "The broker has confirmed that this insured would like to go with the $5M/$5M quote with the labor law exclusion…Please bind coverage for the insured." *Id.* at ¶¶ 26-29. The binder sent to RT Specialty included the employee or worker bodily injury exclusion and the New York limit endorsement. *Id.* at ¶ 30. The policy was then issued, effective from November 29, 2017 to November 8, 2018. *Id.* at ¶ 31.

On March 20, 2018, RT Specialty emailed AXIS to ask, while acknowledging that the "insured took the quote without labor law coverage," whether ROMCO could buy back labor law coverage and increase the policy limit. *Id.* at 32. Internal emails show that Simone Butler, an AXIS representative, indicated to colleagues that she told the broker AXIS "could only entertain" a $1 million policy that included labor law coverage and that AXIS "would have to cancel the current policy" in order to award a policy with labor law coverage to ROMCO. *Id.* at ¶ 34. On April 4, 2018, a quote was emailed for a new policy to RT Specialty but ROMCO, in the end, chose not to purchase an excess insurance policy with labor law coverage, and the previous existing policy from AXIS was never canceled. *Id.* at ¶ 37.

After Mr. Rojas' accident, he filed his complaint in state court on July 18, 2018. *Id.* at ¶ 1. On June 13, 2019, Mr. Rojas' counsel sent AXIS a copy of the amended complaint which

4

included the information that Mr. Rojas was acting as an employee of ROMCO at the time of the accident and copies of affidavits of service on defendants LS Steel Inc. and Above All Equities, Inc. *Id.* at ¶ 42. On June 18, 2019, Jonathan Slade of AXIS acknowledged receipt of that email. *Id.* at ¶ 43.

On December 10, 2019, Mr. Rojas' counsel sent a letter to Admiral and AXIS in which he informed them, "the reasonable value of Mr. Rojas' claim handily exceeds" the Admiral and AXIS policy limits." Pl. R. 56.1 Br., ¶ 31. The communication included medical and expert reports. *Id* at ¶ 32. On February 13, 2020, Mr. Rojas' counsel sent AXIS a copy of the state court's decision granting Mr. Rojas partial summary judgment as to the liability of Above All Equities, Inc. and LS Steel, Inc. *Id.* at ¶ 41.

On April 21, 2020, Thomas Maher, defense counsel representing LS Steel and Above All Equities in the Rojas action, emailed Peter Waldron from AXIS, to inform him that, "there is a possibility that your excess layer may be impacted in this case." Mangino Aff., Ex. KK, 277. On April 24, 2020, Peter Waldron, on behalf of AXIS, advised ROMCO that AXIS was disclaiming coverage for ROMCO in the Rojas action, writing, "To date, AXIS has not received a notice of claim or tender of defense or indemnity from Romco regarding the Lawsuit…However, out of an abundance of caution, AXIS assumes for the purposes of this letter that Romco or another party will seek coverage…AXIS disclaims coverage for the Lawsuit." *Id.* at ¶ 47; Mangino Aff., Ex. LL, 280. The bases for the disclaimer were the policy's New York limitation and the employee or worker bodily injury exclusion endorsement. *Id.* at ¶¶ 46-47.

On June 5, 2020, ROMCO's counsel wrote to AXIS, demanding that it rescind the disclaimer and provide the excess coverage ROMCO believed owed to it. *Id.* at ¶ 49. A third-party complaint was filed against ROMCO in the Rojas action by Above All Equities, Inc. and

5

LS Steel, Inc. on June 15, 2020, seeking contribution and indemnity from ROMCO. *Id.* at ¶ 51; Mangino Aff., Ex. MM, 296.

ROMCO filed the complaint in the instant action on June 23, 2020. In the complaint, ROMCO alleges the AXIS disclaimer of coverage, which occurred over ten months after receiving written notice from Mr. Rojas' counsel but before any claim was filed by ROMCO, was untimely and improper, as well as invalid under New York Insurance Law § 3420. Pl. Compl., ¶¶ 23-24, ECF No. 1. It also alleges breach of contract for AXIS' disclaimer. *Id.* at ¶¶ 46-48. ROMCO seeks damages, as well as a declaratory judgment that the AXIS policy was in effect on the date of loss in the Rojas action; the disclaimer by AXIS was untimely, improper, and is invalid; AXIS is estopped from disclaiming coverage under New York Insurance law § 3420; the AXIS policy provides coverage for Mr. Rojas' claims to both itself and the additional insured parties; and that ROMCO is entitled to costs and attorneys' fees. *Id.* at ¶¶ 45, 48.

Both parties have moved for summary judgment on all claims.

## LEGAL STANDARD

### I.     Summary Judgment Standard

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## II. New York Law

This Court hears this contract law case sitting in diversity jurisdiction. As such, the substantive law to be applied is state law. *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938).

"A federal court sitting in diversity much apply the choice of law rules of the forum state." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997). In deciding which state's law to apply in an insurance dispute, New York courts consider "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* at 1539. Here, the insurance, containing provisions specific to New York, was issued in New York to Plaintiff, which is a New York corporation, and Mr. Rojas' accident, the incident coverage is sought for, occurred in New York. *See* Compl. ¶ 1; Mangino Aff., Ex. Y, Rojas Compl. ¶ 12. Both parties cite New York law in their briefs, and the Court finds that, based on the significant contacts in this case, New York law applies.

Under New York law, "an insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat. Union Fire Ins. Co.*, 25 N.Y.3d 675 (2015). An insurer is "entitled to have its contract of insurance enforced in accordance with its provisions

and without a construction contrary to its express terms." *Bretton v. Mutual of Omaha Ins. Co.,* 110 N.Y.S.2d 760, 763 (1985). "An insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Crp. V. St. Pail Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks omitted). However, "any ambiguities are construed in favor of coverage." *Randolph v. Nationwide Mut. Fire Ins. Co.,* 662 N.Y.S.2d 650, 651 (1997); *see also Patriarch Partner LLC v. AXIS Ins. Co.,* 758 Fed. Appx. 14, 20 (2d Cir. 2018) ("Any ambiguities are to be construed in favor of the insured."). The first step under New York law for interpreting an insurance agreement is for the court to determine whether the contract is unambiguous with respect to the question at issue. *SCW West LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 524 (E.D.N.Y. 2012).

The interpretation of a contract is a question of law where the language of the contract is unambiguous. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985). Where the language is susceptible to two reasonable interpretations, the proper interpretation is a question of fact. *Id.*

## DISCUSSION

I. **AXIS Had No Duty to Disclaim Coverage Under N.Y. Insurance Law § 3420(d)**

   a. **The Unambiguous Language of the Policy Excluded Claims Like That of Mr. Rojas In the First Instance**

The question of ambiguity of the initial insurance contract takes on even greater importance here as New York courts have held that the construction of the original insurance contract affects the insurer's obligation under the New York Insurance Law to disclaim coverage within a reasonable time.

8

N.Y. Insurance Law § 3420(d)(2) says, "If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of…[an] accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured…" N.Y. Ins. Law §3420(d)(2). An unreasonable delay in disclaiming coverage by an insurer under §3420(d)(2) estops that insurer from raising the defense of non-coverage at a later time. *See Adams v. Chi Ins. Co.*, 49 Fed. Appx. 346, fn. ** (2d Cir. 2002) ("In the event that an insurer unreasonably delays under [§ 3420(d)], an insured need show no prejudice in order to prevent the insurer from disclaiming coverage.")

However, such waiver and estoppel cannot create coverage. *Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.2d 692, 698 (1980). The purpose of the disclaimer provision within the New York Insurance Law was "to avoid prejudice to the insured…[who] could be harmed by delay in learning of the carrier's position." *Zappone v. Home Ins. Co.,* 55 N.Y.2d 131, 137 (1982). "It was not, however, to provide an added source of [coverage] which had never been contracted for and for which no premium had ever been paid." *Id.* "For the insured to extend its coverage to more than it originally bargained, it would have had to enter into a supplemental contract expanding the insuring clause or contracting the exceptions," it cannot rely on §3420(d)(2) to do that for it. *Schiff Assoc., Inc.*, 51 N.Y.2d at 698.

Thus, an analysis of the duty to disclaim under the NY Insurance Law becomes a question of whether the AXIS policy "in the first instance" included some coverage for injuries like those Mr. Rojas suffered. *Worcester Ins. Co. v. Bettenhauser,* 95 N.Y.2d 185, 188 (2000). If it did, we deal with a situation where there is no coverage "by reason of exclusion," which would trigger a duty by AXIS to disclaim within a reasonable time under §3420(d). *Zappone*, 55

N.Y.2d at 137. The Court would then consider whether to measure that reasonable time from the time of first knowledge of Mr. Rojas' action or from the time a claim was actually made and assess whether that time was reasonable. However, if the insurance contract between Plaintiff and Defendant *never* included coverage of injuries like those Mr. Rojas suffered, we would be dealing with a "lack of inclusion" of coverage in the original bargained-for contract, under which the New York courts have ruled the insurer has no duty to disclaim and by which coverage cannot be created by failing to do so. *Id.* The question of whether AXIS had a duty to disclaim coverage of Mr. Rojas' injuries, therefore, is a question of contractual interpretation.

When assessing coverage in the first instance in an insurance contract, New York courts have held what is covered "is not merely what is found under the heading 'insuring agreement.' Just as this clause affirmatively indicates the coverage which is included, so does the 'exclusion' clause tell us expressly what is not. In policies so drawn, the protection the insured has purchased is the sum total or net balance, however one labels it, of a coming together of the two. For it is not either alone, but the combination of both which defines the scope of the protection afforded – no more and no less." *Schiff Assoc., Inc.*, 51 N.Y.2d at 697.

The text of the insurance contract is clear it does not cover any claims by ROMCO's construction employees for bodily injury sustained while on the job. While the policy does provide $5,000,000 in excess liability insurance to ROMCO, which the policy notes is engaged in "steel construction," it also contains several exclusions and limits. *See* Mangino Aff., Ex. Y, 118. At the heading of the first exclusion, which excludes "employee or worker bodily injury," it reads, "This endorsement changes the policy. Please read it carefully." *Id* at 122. That exclusion reads, in relevant part, "This insurance does not apply to any liability or damages arising out of any actual or alleged injury to an employee…arising out of and in the course of []

employment by any insured." *Id.* It continues, "This exclusion applies whether an insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury." *Id.*

Here, Plaintiff seeks coverage for the claims contained within the *Rojas* action. In Mr. Rojas' complaint, he alleges he was employed by ROMCO on the day of his accident, that he was engaged in the labor he was hired by ROMCO to perform when the accident occurred, and that he was seriously injured when he fell from an elevated height while performing that work. Rojas Compl., ¶¶ 46, 48, ECF No 1-1. He is therefore alleging damages arising out of injury to an employee in the course of his employment by the insured, ROMCO, precisely what is expressly and unequivocally not covered in the policy. And it matters not that some of the original Rojas defendants seek contribution from ROMCO for Mr. Rojas' injury, as opposed to Mr. Rojas directly. The exclusion specifically says that it applies in all cases including when there is "any obligation to share damages with or repay someone else who must pay damages because of the injury." Mangino Aff., Ex. Y, 122.

Instead of dealing with this point, Plaintiff presumes §3420(d) imposed an obligation on AXIS to disclaim because "excess insurers have an obligation to timely disclaim pursuant to Insurance Law § 3420(d)." Pl. Br., 13. But just as excess insurers are obligated to disclaim where they have a duty to do so, they, just like primary insurers, have no duty to disclaim where coverage did not exist in the first instance. *See Illinois Union Ins. Co. v. Grandview Palace Condominiums Assn.*, 155 A.D.3d 459, 460 (N.Y. App. 2017) ("We reject [] attempts to create coverage where none exists under the policy by arguing that [the primary and excess insurers] waived the [exclusion] or are otherwise estopped to invoke it."). Instead of dealing with this issue, Plaintiff spends much of its brief discussing when the clock started on the duty to disclaim

and whether the time taken was reasonable. As this Court finds the AXIS insurance policy unambiguously did not include coverage for bodily injury claims by ROMCO employees and there was no duty to disclaim, there is no triable issue of fact regarding whether the time AXIS took to disclaim was reasonable. Because the policy itself unambiguously said the insurance would not apply to an injury like Mr. Rojas', AXIS had no duty to disclaim as a matter of law.

Plaintiff also attacks the other provision relied upon by Defendant in arguing the policy excluded coverage for Mr. Rojas' claim in the first instance, the New York Limits of Insurance Endorsement. That limitation reads, "Excess coverage for Employer's Liability is not applicable in situations where an employee is subject to New York Workers Compensation Law, because Employers' Liability Coverage is unlimited in nature in New York State." *Id.* at 133. Plaintiff argues this provision would only apply where common law indemnity or contribution were asserted based upon a ROMCO employee suffering a grave injury under N.Y. Workers' Compensation Law § 11. Pl. Br., 15-16.

NYWCL § 11 provides, "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a grave injury…" N.Y. Workers Compensation Law § 11. This section was part of a reform to ensure immunity for tort liability for employers who provide workers' compensation coverage by exposing them to third-party liability only when the employee had suffered grave injuries. *Rubeis v. Aqua Club Inc.,* 3 N.Y.3d 408, 415 (2004).

Though Plaintiff may not be liable under § 11 to any third-party unless Mr. Rojas suffered grave injury, that is not the question here. Here, the question is whether the New York

12

Limits of Insurance applies to Mr. Rojas' claims, which ROMCO seeks coverage for. The limitation's plain language says the excess coverage does not extend "where an employee is subject to New York Workers Compensation Law." Mangino Aff., Ex. Y, 133. The limitation is not governed by the *employer's* liability to third parties for that employee's injury. Instead, the plain language of the limit excludes coverage where an *employee* is subject to the NY Workers Compensation Law.

In the "Application" section of the NY Workers Compensation Law, it says, "Compensation shall be payable for injuries or death incurred by employees in the following employments" and lists "construction" as one such employment type. N.Y. Workers Compensation Law § 3. Both sides agree that, when Mr. Rojas sustained his accident, he was working at a construction project, and he alleges he was working there as a laborer. Def. R. 56.1 Br., ¶ 4; Rojas Compl., ¶ 46. It is clear that the insurance policy did not contemplate any coverage for any incident where an employee was subject to the N.Y. Workers Compensation Law, and it seems equally clear that Mr. Rojas was subject to the law when he was injured. Therefore, Plaintiff's arguments about whether Mr. Rojas' alleged injuries were "grave" as defined under § 11 are irrelevant to whether the limitation applies.

The plain language of both the employee or worker bodily injury exclusion and the New York Limits of Insurance unambiguously show that, when Plaintiff and Defendant contracted for insurance, the insurance contracted for did not include coverage of claims arising out of ROMCO's employees' bodily injuries suffered in the course of employment. As such, Defendant had no duty to disclaim, and summary judgment is granted to it on Plaintiff's N.Y. Insurance Law claim.

### b. Even if the Plain Contract Language Were Ambiguous, the Record Shows the Parties Intended to Contract for Insurance that Did Not Include Coverage of Injuries Like Mr. Rojas'

I have already noted that the language of the insurance contract is unambiguous in excluding coverage to bodily injury suffered by ROMCO's employees in the scope of their employment. However, I note that even if the Court had found the language ambiguous, there is strong extrinsic evidence to show the parties' intent at the formation of the contract was to exclude coverage for injuries like Mr. Rojas'. *See Hastings Dev., LLC v. Evanston Ins. Co.*, 701 Fed. Appx. 40, 42 (2d Cir. 2017) (citing *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012)).

As detailed in the fact section above, the record shows the parties specifically negotiated regarding the inclusion or exclusion of "labor law coverage," that Plaintiff noted it agreed to the contract without such coverage, and that Plaintiff made subsequent inquiries about purchasing a new policy that, unlike its current policy, included labor law coverage. Yet, Plaintiff did not procure that coverage. The New York Labor Law contains provisions which impose "absolute liability on owners, contractors, and their agents for injuries to workers engaged in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure, which result from falls from ladders, scaffolding, or other similar elevation devices that do not provide proper protection against such falls." *Orellano v. 29 E. 37th Street Realty Corp.,* 292 A.D.2d 289, 290 (N.Y. App. 2002) (internal quotation marks omitted).

Mr. Rojas alleges that he suffered his injury in a fall because defendants failed "to provide [Rojas] with…safe, proper and/or any scaffolding and/or ladder and/or harness and/or safety lines for use in his work…" Rojas Compl., ¶ 56. The insurance contract before this Court resulted from a specific choice by Plaintiff to purchase a policy that did not contain coverage for this type of incident and instead included the employee bodily injury exclusion and New York

limitation. Plaintiff did so, presumably, because adding such coverage would have resulted in a lower policy limit and a much higher policy premium, which Plaintiff chose to forgo. This is strong evidence that Plaintiff understood this policy would not cover injuries like Mr. Rojas' when it contracted with Defendant and now attempts to add that coverage via waiver and estoppel, which is impermissible under New York law.

## II. The Insurance Contract Did Not Include Coverage for Mr. Rojas' Injuries, and, Thus, Defendant Did Not Breach Its Contract

Plaintiff's second cause of action is a breach of contract claim against Defendant. Under New York law the insured must prove four elements to show breach of contract: (1) the making of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages. *Olin Corp. v Lamorak Ins. Co.,* 332 F. Supp. 3d 818, 839 (S.D.N.Y. 2018). It is the policyholder's burden to show the insurance contract covers the loss. *Id.* (citing *Morgan Stanley Grp. Inc. v. New England Ins. Co.,* 225 F.3d 270, 276 (2d Cir. 2000)).

Here, by its unambiguous language, the insurance contract does not cover the loss. The language in the New York limitation and the worker's bodily injury exclusion is clear and unambiguous and, for the reasons discussed above, clearly precludes coverage for Mr. Rojas' bodily injury. Plaintiff offers no argument for why the policy would cover this claim, other than under a theory of waiver and estoppel, which is incorrect as a matter of law.

Therefore, summary judgment should be granted to Defendant on this claim as well.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

       /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
      March 31, 2022